| | | |
|---|---|---|
| ARTURO TERRELL, JR. (#139953), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 C 1103 |
| | ) | |
| | ) | |
| LIEUTENANT WAYNE CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Arturo Terrell, Jr. ("Terrell"), a federal prisoner incarcerated at the Kane County Jail proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Kane County Jail Lieutenant Wayne Carter ("Carter"). Terrell alleged he endured six adverse conditions at the jail. Following this Court's order on Carter's motion to dismiss, three claims remain: (1) Terrell regularly had to eat in his cell near a backed up toilet; (2) temperatures in his cell were extremely cold; and (3) he had to wait inordinately long periods of time between requesting medical care and receiving a doctor's appointment. Currently pending before the Court is Carter's motion for summary judgment. Carter argues that Terrell failed to exhaust administrative remedies for these claims and, alternatively, that Carter did not act with deliberate indifference. Terrell has responded. For the following reasons, the Court grants Carter's motion for summary judgment and dismisses this case.

## BACKGROUND

Terrell is and was at all times relevant to this case a federal inmate confined at the Kane County Jail. Carter is and was at all times relevant to this case employed as the Facility Operations Lieutenant at the Kane County Jail. Carter has held this position since May of 2011. One of his duties is to review and respond to grievances from inmates.

Terrell entered the jail on January 20, 2012, and has been confined there since that date. From June 18, 2012, to April 29, 2013, Terrell was housed in cell A25 in Pod A of the north tower. The events giving rise to Terrell's remaining claims (having to eat in his cell near a backed up toilet; cold cell temperatures, and inadequate health care) occurred while he was housed in cell A25.

When Terrell entered the Kane County Jail, he received three pairs of socks, three t-shirts, three boxer shorts, two pairs of pants, one towel, a mattress, a mattress cover, a blanket, and a Detainee Handbook. Inmates could purchase additional clothes from commissary, including a thermal top, which Terrell purchased.

Terrell was aware of the grievance procedures, which are explained in the Detainee Handbook. As set out in the Detainee Handbook, those procedures require the following. Grievances must be in writing and filed within 48 hours of the incident, unless the detainee shows good cause for the delay. The grievance must include the date,

time, and location of the alleged offense, the parties involved, a short explanation of the incident, and the detainee's name, booking number, and signature. Grievances will be acknowledged within 15 days of receipt, unless circumstances require more time. If more time is needed, the detainee is notified in writing of the reason for the delay and is given an expected date the grievance will be addressed. After receiving a response, detainees receive one level of appeal. The detainee must file an appeal within 48 hours of the final grievance decision; the detainee must state his reasons for the appeal; and the original grievance must be included. The appeal is forwarded to the Commander of Corrections. Although Terrell was aware that he could file a grievance, he was unaware he could appeal a decision or response to a grievance. He acknowledges, however, that he had a copy of the Detainee Handbook.

Up until July 23, 2012, inmates were provided paper grievance forms and medical request slips. On July 23, 2012, the jail implemented a computerized system, which allowed detainees to submit grievances and medical requests not only by filling out a paper form but also electronically at a computer kiosk located in each pod. Inmates needed only to type in their identification number and pin to access computer grievances and medical request slips. The Detainee Handbook was available from the computer screen. All grievances submitted through the computer kiosk were forwarded to Lieutenant Carter, who would type his response. The detainee could access the response

by logging on at a computer kiosk. Requests that are not submitted as grievances are not sent to Carter.

If Carter received a grievance about a maintenance issue, such as cold temperatures or backed up toilets, he would contact the maintenance supervisor Glenn Diller ("Diller"). Carter had no further authority over maintenance issues other than to contact Diller. The maintenance department consists of Diller, four maintenance engineers, and three janitors. An engineer is present at the jail Mondays through Fridays from 5 a.m. to 5 p.m. Furthermore, an engineer is on call at all other times.

**Eating in Cell:**

On January 18, 2013, Terrell submitted a grievance stating: "Why are we eating in our cell[s] when we aren't on lockdown that is not right." On January 28, 2013, Carter responded: "That is your opinion." Terrell did not appeal this response. This is the only grievance Terrell filed about eating in his cell. Terrell did not mention any problems with toilets in the grievance. Nor did he file a grievance about his toilet not working properly, and Carter had no knowledge that Terrell's toilet backed up. Maintenance Supervisor Diller does not recall a backed-up toilet smell in any of the cells of the jail.

According to Terrell, his toilet became clogged once or twice a week. He believes it was caused by maintenance persons fixing toilets above Terrell's cell or by Terrell and

his cellmate unintentionally clogging their toilet. When a toilet was clogged, a maintenance person came that day with a heavy duty plunger. If a maintenance person was not available, Terrell could use a smaller plunger that was kept in his pod. Sometimes Terrell would not flush because it would overflow, and he and his cellmate would have to smell their toilet while they ate.

Terrell often did not eat breakfast because he did not like what was served. Terrell also did not like eating meals that were supposed to be hot (spaghetti, beans) but were served cold. He would often eat in the dayroom and would eat food bought from the commissary, such as chips, candy bars, noodles. He was able to eat something every day.

**Cold Temperatures:**

On the morning of December 24, 2012, at 7:31 a.m., Terrell submitted a grievance and also a request to the Classification Unit at a kiosk stating: "To whom it may concern, would you all please turn some heat on in here." On December 26, 2012, Carter responded to the grievance: "We will check the heat again." Terrell did not appeal this response. Carter did not receive or respond to the request because it was not a grievance. On December 26, 2012, Sergeant Morris closed the request without comment. Terrell did not appeal or seek further review of the request.

On the evening of December 24, 2012, at 6:52 p.m., Terrell submitted another grievance at a kiosk stating: "Would you please turn the heat on we are freezing up in here." Carter responded on December 28, 2012: "We have adjusted the heat again." Terrell did not appeal this grievance response.

On December 27, 2012, again at a kiosk, Terrell submitted a request to the Classification Unit for heat to be turned up. Nina Jones, a member of the Classification Unit, responded on December 27, 2012: "I had the Officer put in on the maintenance log again." Terrell did not appeal the response. On December 28, 2012, Terrell submitted another kiosk request to the Classification Unit stating that "there is still no heat on yet." Again, Carter did not receive this request because it was not a grievance, but Sergeant Aguirre in the Classification Unit responded: "I am pretty sure there is heat on, it[']s 32 degrees outside. If you have issues in your unit contact your UNIT OFFICER. He is in there with you; he should probably be made aware." On December 30, 2012, Terrell replied:

> We tell them all the time and they tell us to write to you all because it[']s nothing they can do. The maintan[ance] man even [k]no[w] about [it] and still keep[s] lying, talking about that he got to go to the roof. I mean all you have to do is call up here and ask the officer. Because you all and the pod officer keep spinning us around. It[']s freezing up in here.

The reply was labeled as an "appeal." However, there is no response to Terrell's appeal. Instead, the computer printout indicates that the grievance is still pending on appeal, as opposed to "closed," which appears for Terrell's other grievances.

On January 20, 2013, Terrell submitted a Detainee Request Slip, stating: "We have been telling staff about how cold it is in these cells, no one is doing anything about it, so I'm asking you could you please do something about it." Carter responded on January 28, 2013, "We are working on this issue." Terrell did not appeal this response. He filed no other grievances about being cold.

Terrell slept in two pairs of pants, two shirts, a long-sleeved thermal shirt, and two blankets. Carter did not know that Terrell was having difficulty sleeping due of the cold because Terrell did not mention this in his grievances.

Whenever an inmate filed a grievance about cold temperatures, a maintenance person came to the pod. Terrell estimates that a maintenance person came every other day during the period of time he was complaining about cold temperatures. According to Terrell, a maintenance person came to Terrell's pod after New Year's Eve. The maintenance person apologized and explained that his thermometer had been broken, that the temperature was 54 degrees, and that he would turn up the heat. Terrell did not have a thermometer, but he guesses the temperature in his cell was 48 degrees. After New Year's Eve, a maintenance person was able to fix the problem and temperatures rose to

64 or 65 degrees. Carter never ignored Terrell's grievances about cold temperatures, and he always informed Diller of Terrell's complaints. Carter had no knowledge how to operate the heating system and could not adjust temperatures himself. Nor did he have authority other than to contact the maintenance department to fix a maintenance issue.

The Kane County Jail consists of two towers (North and South Tower). Each tower includes six housing units ("pods"). Each tower has three HVAC units on the roof. Temperatures at the jail are controlled by a Honeywell Enterprise computerized system in conjunction with a digital control on each of the rooftop HVAC units. Only Diller and two other maintenance engineers are trained in using the computerized system and in manually adjusting the heat settings on the rooftop HVAC units. The set point for temperatures at the Kane County Jail is 68-72 degrees Fahrenheit. Each housing unit has a thermostat that is connected to the computerized system, so that it can read the temperatures in each unit.

If a complaint about the temperature is received, a maintenance person will check the temperature in the pod to see if it is within the set range of 68 to 72 degrees. If it is not, the maintenance person will adjust the temperature from the computerized control. If the computerized controls are not working properly, the maintenance person would check the HVAC unit on the roof to make sure it is running properly and may adjust the temperature manually. If the HVAC unit is not working properly, the maintenance

person determines if he is able to fix it himself and, if he is not, Kane County Facility Management is contacted for authorization to contact an outside contractor. This is the procedure that was followed from December 2012 through February 2013 with respect to complaints from A-pod. In January of 2013, there were multiple complaints about cold temperatures in A-pod. Rick Genslinger from Building Management contacted the outside contractor, which performed work on the HVAC unit on January 28 and 29, 2013. The unit serving A-pod had its controls reset and its discharge temperature adjusted.

**Medical Attention:**

On January 28, 2013, Terrell submitted a grievance stating: "Why is it that we get poor medical attention in here?" Carter responded: "It's not poor." Terrell did not appeal Carter's response. This is the only grievance Terrell filed about poor medical care. Terrell never filed a grievance stating that the time between requesting and receiving medical care was too long, and Carter was unaware of such a complaint from Terrell. Carter was unaware Terrell experienced weight loss, depression, high blood pressure, or other conditions requiring medical care. The only medical issue Terrell experienced that was made known to Carter was a January 18, 2013, medical request slip stating that his shoulder hurt from sleeping on an inadequate bed. Carter informed

Terrell to make a request to see the doctor. Carter never refused to obtain medical care for Terrell.

Terrell was seen for a physical on January 25, 2013. After the physical, Terrell had his pulse and blood pressure regularly checked on the following dates: January 28, 29, 30, 2013; February 11, 13, 18, 20, 25, 27, 2013; March 3, 4 5, 6, 9; April 9, 2013; and then monthly. Plaintiff's medical records indicate that he was receiving medication for high blood pressure throughout the first half of 2013. Terrell on occasion has refused blood pressure medication because he believed he was fine.

Between January 20, 2012, and April 29, 2013, Terrell submitted four medical requests at the jail's computer kiosks. On October 28, 2012, he requested eyeglasses. On January 11, 2013, he requested to weigh himself. On March 30, 2013, he sought mental health care, requesting: "I would like to talk to some body about depression and high blood pressure, please, I need help." Later in the day on March 30, 2013, Terrell submitted another request, stating: "Yes, I be having anxiety attack at time and I'm having depression more sometime also, so could I please talk to someone A.S.A.P." On March 30, 2013, at 8 p.m., a nurse spoke to him about anxiety management. Terrell was never diagnosed with depression. He took medication only for high blood pressure, which began in February of 2013. Carter does not receive requests for medical care.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

**N.D. Ill.  Local Rule 56.1:**

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [parties'] Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and alterations omitted); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear

presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). Terrell's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ( "[t]hough courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules"); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even pro se litigants must follow rules of civil procedure").

Consistent with the local rules, Carter filed a Local Rule 56.1(a)(3) Statement of Material Facts along with his summary judgment motion. Each substantive factual assertion in his Rule 56.1 Statement cites evidentiary material in the record and is supported by the cited material.[1] *See* Rule 56.1(a). Also consistent with the local rules, Carter served Terrell with a Local Rule 56.2 Notice to Pro Se Litigants, explaining in detail the requirements of Local Rule 56.1 and Terrell's need to respond to both the summary judgment motion and Carter's Rule 56.1 Statement. (Doc. 50).

Although Terrell responded to the summary judgment motion, he neither responded to Carter's Rule 56.1 Statement in accordance with Local Rule 56.1(b)(3)(B), nor submitted a statement of additional facts pursuant to Local Rule 56.1(b)(3)(C). (Doc.

---

[1] The Court expresses its gratitude to Defendant's counsel for her complete and organized judge's copy of the summary judgment materials.

53). Accordingly, the facts set forth in Defendant's Local Rule 56.1(a)(3) Statement are deemed admitted and constitute the factual record on which the summary judgment motion will be resolved. *See* N.D. Ill. L.R. 56. 1 (b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012). The Court has considered Terrell's "Answer" and exhibits filed in response to the summary judgment (Doc. 53); however, the facts of this case are taken from Carter's Rule 56.1 Statement, which is well supported by the record. Notably, Terrell's response, for the most part, does not contest the facts presented in Carter's Rule 56.1 Statement.

## DISCUSSION

Carter argues that he is entitled to summary judgment based on the following grounds: (1) Terrell failed to exhaust administrative remedies for all three of his claims, (2) the evidence shows that Terrell cannot establish a constitutional violation with respect to his claims, and (3) Carter acted reasonably with respect to all three claims and is entitled to qualified immunity.

### A. Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Under

§ 1997e's exhaustion requirement, no prisoner "is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Even where the prisoner seeks relief that was unavailable in the administrative system, such as money damages, he must still exhaust available administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006).

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of a prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d at 809; see also *Woodford*, 548 U.S. at 90. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905-06 (7th Cir. 2011). Such an opportunity exists only if "the grievant complies with the system's critical procedural rules." *Id.*

Furthermore, an inmate must exhaust all levels of available administrative review prior to bringing suit. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002), citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). He may not complete the exhaustion process after he files his case. *Id.*

The grievance procedures for Kane County Jail are set out in the Detainee Handbook, which Terrell acknowledges he received and had in his cell. All grievances must be filed within 48 hours of the alleged offense. Receipt of a grievance must be acknowledged within 15 days. All findings and actions taken to correct the alleged violation must be submitted to the detainee in writing. Detainees receive one level of appeal, which must be submitted within 48 hours of a final decision on the grievance. The appeal is forwarded to the Commissioner of Corrections.

In December of 2012, and January of 2013, Terrell submitted eleven grievances. He appealed only one response (his December 30, 2012 reply to Officer Aguirre's December 28, 2012, response to Terrell's grievance about cold temperatures was considered an appeal). Other than one grievance about cold temperatures, Terrell never sought review after receiving a response to a grievance. He stated in his deposition that he did not know he could appeal; however, he acknowledged that he received and kept in his cell a copy of the Detainee Handbook. Terrell could have also accessed the grievance procedures at the computer kiosks he used to submit his grievances.

Terrell's ignorance of a procedural requirement does not excuse the requirement that he use the procedure. *Hudson v. Corizon Medical Services,* 557 Fed. Appx. 573, 574-75 (7th Cir. 2014) (an inmate's ignorance of his ability to appeal a grievance does not excuse the exhaustion requirement), citing *Albino v. Baca*, 697 F.3d 1023, 1037 (9th Cir. 2012) ("In short, the plaintiffs' ignorance of the administrative remedies alone did

not excuse exhaustion."); *McSwain v. Schrubbe,* 382 Fed. Appx. 500, 503, 2010 WL 1904856 *3 (7th Cir.2010) ("ignorance of the proper grievance procedure does not excuse compliance"), citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) (a prisoner's subjective belief whether an appeal of a grievance was available is not a factor; "The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.").

Given the availability of the Kane County Jail's grievance procedures, set out both in the Detainee Handbook Terrell kept in his cell and at the computers where he submitted his grievances, Terrell had to follow the administrative procedures and appeal grievance responses before he filed this suit. Terrell's lack of knowledge of his need to appeal did not excuse this requirement. Terrell's failure to appeal responses to his grievances about inadequate medical care and being served meals in his cell in close proximity to a backed up toilet warrants dismissal of these claims.

Furthermore, Terrell's two grievances relating to these two issues did not fairly present the issues for consideration by jail officials. Terrell's only grievance about eating in his cell stated simply: "Why are we eating in our cells when we aren't on lock down. That is not right." Carter responded: "That is your opinion." Terrell's only grievance about inadequate medical care stated: "Why is it that we get poor medical attention all here." Terrell received a response: "It's not poor." Neither grievance notified

Carter that Terrell was being served meals in close proximity to a backed up toilet or that he was waiting weeks between the time he submitted a medical request slip and a doctor's visit. Neither grievance gave the jail "a fair opportunity" to address these issues such that "[t]he benefits of exhaustion c[ould] be realized." *Pavey*, 663 F.3d at 905-06. Accordingly, Terrell's claims that he was forced to eat in his cell near a backed up toilet and waited long periods of time for doctor appointments are dismissed for failing to exhaust administrative remedies.

With respect to cold temperatures and insufficient heat, Terrell's December 30, 2012, reply to the response he received to his December 28, 2012, request for heat was labeled as an appeal. Whether simply replying to a grievance response at a computer kiosk sufficed as an appeal is unclear from the Detainee Handbook and other summary judgment materials, and Carter does not address whether Terrell's reply was an appeal. Accordingly, the record does not support dismissal of Terrell's cold-cell claim based upon a failure to exhaust. The summary judgment record, however, demonstrates that Terrell cannot establish a constitutional violation against Carter for this claim or the other two claims.

**Deliberate Indifference to an Unconditional Condition of Confinement:**

Pretrial detainees are entitled to confinement under humane conditions which provide for their "basic human needs." *Rice ex rel. Rice v. Correctional Medical*

*Services*, 675 F.3d 650, 664 (7th Cir. 2012) (citation omitted). "[T]he government may not, through deliberate indifference to a known risk of serious injury, deny [a pretrial detainee] 'adequate food, clothing, shelter, and medical care.'" *White v. Monahan*, 326 Fed. Appx. 385, 387 (7th Cir.2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The analysis for a deliberate-indifference claim is two-fold: (1) "we must determine whether the conditions at issue were sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities"; and (2) "[i]f the inmate successfully establishes that the conditions were sufficiently serious, we then examine whether prison officials acted with deliberate indifference to the conditions." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quotation marks and citation omitted). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* (quotation omitted).

"A lack of heat, clothing, or sanitation can" amount to a constitutional violation. *Gillis v. Litscher*, 468 F.3d 488, 494 (7th Cir. 2006). Inmates have "a right to be free from extreme hot and cold temperatures." *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986). "To determine whether extreme heat or cold amount to a serious constitutional deprivation, courts look to various factors, including the severity of the cold or heat, its duration, whether the prisoner has alternative means to

protect himself, and whether the prisoner must endure other uncomfortable or harsh conditions." *Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963, at \*6 (N.D.Ill. Feb.9, 2009). The plaintiff must establish that he both was exposed to extreme cold and lacked sufficient means to keep warm. *See Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (exposed to cold with no blanket); *Del Raine*, 32 F.3d at 1031 (exposed to forty-degrees-below-zero wind chill during half hour cell and strip searches with no access to clothes or any covering to stay warm); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056, 1059 (7th Cir. 1991) (malfunctioning heating system with sub-zero outside temperatures and inadequate protection).

In Terrell's case, there is evidence that he and other inmates endured temperatures of 54 degrees, if not lower, for at least a week. He began complaining on December 24, 2011, and the problem was fixed sometime after New Year's Eve. Courts have found exposure to such temperatures for an extended period of time could be considered sufficiently serious to satisfy the first prong of a deliberate-indifference claim. *See Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987) (a genuine issue of material fact about exposure to cold temperatures existed where prison inmate claimed that cell temperatures fell between 52 and 54 degrees); *Dixon*, 114 F.3d at 643-44 (evidence that temperatures averaged around 40 degrees for several weeks, sometimes falling below freezing, and

inmates having only one blanket was considered sufficiently severe). However, Terrell had at least one blanket and wore two pairs of pants, a thermal shirt, two additional shirts, and two pairs of socks to keep warm. *See Carreon v. Thomas*, No. 12 C 4799, 2014 WL 51368 at *3 (N.D. Ill. Jan. 14, 2014) (summary judgment granted where inmate was exposed to temperatures cold enough that he could see his breath, but he wore several layers of clothing and had several blankets to keep warm).

The Court need not determine whether there is a genuine issue of material fact with the first prong of the deliberate-indifference analysis. The uncontested evidence demonstrates that Carter did not act with deliberate indifference. Carter, who was neither an engineer nor someone who could fix the jail's heater, informed the chief maintenance person at the Kane County Jail every time a complaint about cold temperatures was received. Terrell, himself, acknowledges that a maintenance person came to Terrell's area of the jail about every other day during December 2012 and January 2013. Terrell cannot establish deliberate indifference in light of such evidence. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (both cases holding that no deliberate indifference existed where non-medical officer investigated inmate's medical complaints and referred them to the medical providers who could be expected to address them). Terrell's complaints of cold temperatures were not ignored but, rather, received abundant attention. The jail's

maintenance department may have been negligent or even wholly inept with not determining the problem or contacting an outside contractor sooner (though the timing of the heater's malfunctioning just before Christmas likely was a factor). However, there is no evidence that Carter, or anyone else for that matter, ignored complaints of cold temperatures. The Seventh Circuit has often referred to summary judgment as "the 'put up or shut up' moment in litigation," meaning "the non-moving party is required to marshal and present the court with the evidence []he contends will prove h[is] case[, i.e.,] evidence on which a reasonable jury could rely." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The evidence described above shows clearly that Carter responded to grievances about cold temperatures as he was supposed to by contacting the maintenance department. Terrell presents no evidence that Carter's responses were unreasonable. Summary judgment is thus warranted for this claim.

Terrell's other two claims are without merit for essentially the same reason. Terrell never filed a grievance about having to eat near a backed up toilet; nor did he grieve inordinately long wait times for medical examinations. The uncontested evidence demonstrates that Carter was unaware of both these issues. *Hayes*, 546 F.3d at 523-24 (deliberate indifference requires actual knowledge by the defendant). Furthermore, Terrell acknowledges that a maintenance person came every time he had a backed up toilet; Terrell had access to a small plunger in his pod; he was able to eat something

every day; and he received medical attention in response to his four medical request slips. The record thus indicates not only that Terrell cannot establish deliberate indifference against Carter, but also that he cannot demonstrate deliberate indifference against any other person at the jail.

For all the reasons stated above, the record before the Court demonstrates that Terrell failed to exhaust administrative remedies for two of his three remaining claims and that he cannot establish deliberate indifference with respect to any of his three claims. Summary judgment for Carter is thus warranted. Because "the merits of the deliberate indifference claim are dispositive of the case," the Court need not address Carter's qualified immunity argument. *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009).

## CONCLUSION

Defendant Wayne Carter's motion for summary judgment is granted. All remaining claims of this case are dismissed. Plaintiff Arturo Terrell shall take nothing from this judgment. This case is closed.

Charles P. Kocoras
United States District Judge

Dated: 11/20/2014